That's In re. Melnik. We only have one party here arguing. Ms. Reddy, are you there? Are you there on the line? I saw you, I think, a minute ago. Yes, Your Honor. Okay, just give us a second to get you up on the screen.  Yes, ma'am. It says, unable to start video. Your video because the host has stopped it. Okay, how about now? Here you are. Okay, so we can see you and we can hear you. Can you see and hear us? Yes, Your Honor. All right. So just so it's clear to you, Judge 3 is Judge Menashe, Judge 5 is me, Judge Sullivan, and Judge 7 is Judge Lynch. For whatever reason, our screens don't have our names, just the numbers. So, all right, you have five minutes and you may proceed. Thank you, Your Honor. May it please the Court. Good afternoon, Your Honor. My name is Deepika Reddy and along with the other named plaintiff in this case, Pratap Reddy, we are representing ourselves pro se as the plaintiff appellants. We will be arguing why this Court should reverse the Bankruptcy Court's ruling or make the alternative remanded to the Bankruptcy Court with appropriate instructions for a new trial. This is a case about the defendant appealee who is using the judicial system to get out of a loan he does not want to pay back. The lower court erred for three reasons. First, the lower court erred in holding that Melnick did not commit any fraud when he tried to resell the practice and tried to renegotiate payment terms to plaintiffs. Second, the lower court erred in finding that Melnick had no fiduciary duty to reveal his financial status to the petitioners at the time of procuring the loan from the plaintiff. Third, the lower court erred as a matter of law by not applying the New York State laws regarding commercial leases. With regards to fraud committed by Melnick, within two weeks of buying the practice, Melnick listed the practice for sale with Henry Schein. When listing it, Melnick relisted the practice for sale. Melnick himself arbitrarily decided to lower the initial purchase value of plaintiff's practice by $40,000. By allowing Melnick to reduce plaintiff's practice value by $40,000, Henry Schein and Melnick had entered into an illegal contract. Since to list a practice for sale with Henry Schein, the purchase value of the dental practice is determined solely by Henry Schein's team of experts. Plaintiff's initial practice was, in fact, determined by Henry Schein. Throughout the negotiation, Excuse me, this is Judge Lynch. Yes, sir. I'm not sure I understand that. He bought the practice from you, right? Yes, Your Honor. And thereafter, he attempted to sell it. Is that what happened? Within two weeks. Within two weeks, Your Honor, he put it back to sell it. Yes, Your Honor. So why is that fraudulent? And why would it be fraudulent that he offered it for a lower price? Your Honor, any time a practice is listed on Henry Schein's website, the listing represents that Henry Schein came up with the value of the practice. It has to evaluate the practice. When I put it up for sale with Henry Schein, I had paid them $2,500 for the team of experts to come and evaluate the practice, and they come up with the price. I cannot mean what I think my practice is worth. Whereas in Melnick's case, he did not pay them $2,500. Nobody from Henry Schein came in to evaluate his practice. They just listed it back on their website with $40,000 decreased. You have to understand, Your Honor, this is just less than two weeks when Henry Schein's experts had evaluated my practice for $200,000, and now within a matter of two weeks, there was a drastic drop of $40,000. I was led to believe throughout the negotiations that it was Henry Schein that had actually brought the practice value down and not Melnick. I still don't understand what that has to do with whether he defrauded you when he purchased the practice. If he decided to turn around and sell it the next day, why would he not be allowed to do that? Normally, he would do that at a higher price because he's trying to make money. But either way, once he owns it, what deceives you about what he's saying now to the world about trying to sell off the practice? What deceived me, Your Honor, was throughout the negotiations' time, he did not tell me that he had reduced the price by $40,000, and he led me to believe Henry Schein had reduced it by $40,000. So in his repayment terms to me, he wanted me to reduce the $40,000. So that is where the fraud came. Because he should have told me, no, it was not Henry Schein. I came up with this number, and I'm asking you to reduce it because I have an email asking him, in fact, asking Henry Schein, why was the price $40,000 less? And now why is Melnick trying to renegotiate the terms of what he procured from me, the loan he procured from me, saying that now the practice value had come down by $40,000? I was never informed that at any time it was Melnick's own doing. But did you agree to reduce the price? No, Your Honor, I did not. Then how were you defrauded? I'm still not understanding. How did any of this constitute a fraud on you? He still owed you what he owed you in the first place. No, because the judge said, in his end, the lower court held that there was no fraud in renegotiating. Right, and that's what I'm asking you. Why is the judge wrong about that? Normally when there's a fraud, right, someone lies to you, and they get money from you as a result. But you're saying that maybe there was some attempted something to try to get you to forgive part of the loan after the fact, but you didn't do it. So the question here is, was there a fraud in the first place? Was he not intending to pay you from day one and somehow got the practice from you without any intention of paying for it? Yes, Your Honor. Right from the beginning, he had no intention of paying it back because he kept on saying that Henry Schein had misrepresented or given him the wrong value of $200,000. So right from the beginning, he was trying to say, no, I will not pay the price because the value was wrong. So then when the value was reduced by him, he never told me that he reduced the value. So he was trying to renegotiate again, saying that, no, this is the value Henry Schein is saying that it is worth. So that $40,000, if it was, and I had told him that, I said, if from a third party or if some legal experts come and say, yes, the value of the practice is $160,000, I will consent to it. And at no time, the negotiations were still ongoing. And he all of a sudden decided to dissolve the practice. And because we had a buyer, Dr. Nolan was willing to buy the practice and lease the building. But he did not even give him a chance, even an opportunity, because without informing Dr. Nolan or to me, it dissolved the practice. So that way I could not sell it to anybody or rent the building to anybody because now the practice was dissolved. So that's what when I said, Johanna, because we were kept in that illusion that it was Henry Schein who had, in fact, brought the value down and he was asking me to reduce the practice value. So I was never actually, we were still in negotiations when he himself, that's where I said the fraud was committed because he closed the practice. He literally sent the patient's files to a different office. Once you do that, the value of the practice is zero. Nobody is going to come and buy the practice. So that's why I had to say that. But you had evicted him by that point, right? No, Johanna, I had still given him permission, even though there was an eviction from Henry Schein that requested me to allow him to sell the practice. So I said, yes, he can come back and he can be there. And he, in fact, was there when he moved all the, because that's how we got access to the building, when he literally physically moved all the files out of the building. He chose to be evicted. Okay. I did not evict him then. All right. Thank you, Dr. Reddy. We will reserve decision. Thank you very much for your arguments. We have no further arguments today, so that concludes today's session. Before we adjourn.